NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GUIZHOU TYRE CO., LTD., GUIZHOU TYRE IMPORT AND EXPORT CO., LTD., AEOLUS TYRE CO., LTD.,**
*Plaintiffs-Appellants*

**QINGDAO FREE TRADE ZONE FULL-WORLD INTERNATIONAL TRADING CO., LTD., XUZHOU XUGONG TYRES CO., LTD., TRELLEBORG WHEEL SYSTEMS (XINGTAI) CO., LTD., QINGDAO QIHANG TYRE CO., LTD., WEIHAI ZHONGWEI RUBBER CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2163, 2023-2164

---

Appeals from the United States Court of International Trade in Nos. 1:17-cv-00100-TCS, 1:17-cv-00102-TCS, 1:17-cv-00103-TCS, 1:17-cv-00104-TCS, 1:17-cv-00111-TCS, 1:17-cv-00113-TCS, 1:17-cv-00123-TCS, Senior Judge Timothy C. Stanceu.

-------------------------------------------------

**GUIZHOU TYRE CO., LTD., GUIZHOU TYRE IMPORT AND EXPORT CO., LTD.,**
*Plaintiffs-Appellants*

**CHINA MANUFACTURERS ALLIANCE LLC, SHANGHAI HUAYI GROUP CORPORATION LIMITED, FKA DOUBLE COIN HOLDINGS LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2023-2165

————————————

Appeal from the United States Court of International Trade in Nos. 1:19-cv-00031-TCS, 1:19-cv-00034-TCS, Senior Judge Timothy C. Stanceu.

————————————

Decided:  April 28, 2025

————————————

JORDAN CHARLES KAHN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, Washington, DC, argued for plaintiffs-appellants.  Also represented by DHARMENDRA NARAIN CHOUDHARY, KAVITA MOHAN; NED H. MARSHAK, New York, NY.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee in appeals 2023-2163, 2023-2164.  Also argued by KARA WESTERCAMP in appeal 2023-2165.  Also represented by EMMA E. BOND, BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY,

LOREN MISHA PREHEIM, YAAKOV ROTH; ELIO GONZALEZ, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

_____

Before TARANTO, CLEVENGER, and HUGHES, *Circuit Judges*.

TARANTO, *Circuit Judge*.

The appeals before us are materially the same in the legal and factual issues presented. Each pertains to entries of merchandise from the People's Republic of China (PRC) subject to an antidumping-duty order issued by the United States Department of Commerce. In each review, Commerce concluded that certain exporters from the PRC, of which the PRC indirectly owned a substantial but minority share, were not entitled to a separate antidumping-duty rate for the subject merchandise because they failed to demonstrate their independence from the PRC government's control. Commerce thus assigned those entities the PRC-wide antidumping-duty rate, and the United States Court of International Trade (Trade Court) eventually sustained Commerce's determinations. *Guizhou Tyre Co. v. United States*, 641 F. Supp. 3d 1371, 1374 (Ct. Int'l Trade 2023) (*CIT 2023 OTR Decision*); *Guizhou Tyre Co. v. United States*, 641 F. Supp. 3d 1386, 1388 (Ct. Int'l Trade 2023) (*CIT 2023 TBT Decision*). The companies appeal to this court, challenging Commerce's refusal to assign them their own separate rates. Because appellants' assertions of legal error fail and Commerce's findings are supported by substantial evidence, we affirm.

I

A

Two appeals are before us from a Trade Court judgment in an administrative review based on Commerce's

2008 order subjecting to antidumping duties certain new pneumatic off-the-road (OTR) tires from the PRC. *See* Fed. Cir. Nos. 23-2163 and 23-2164. Specifically, the two appeals involve the seventh administrative review, under 19 U.S.C. § 1675, of subject merchandise that entered the United States between September 1, 2014, and August 31, 2015. J.A. 3827–28. The entities under investigation included companies we call "Guizhou Tyre" collectively—specifically, Guizhou Tyre Co., Ltd. (GTC) and its wholly owned affiliate, Guizhou Tyre Import and Export Co., Ltd. (GTCIE)—as well as Aeolus Tyre Co., Ltd. J.A. 3829. Guizhou Tyre and Aeolus are the appellants in those appeals, which we consolidated and which we refer to jointly as the OTR Appeal.

In April 2017, Commerce determined that Guizhou Tyre and Aeolus were not entitled to their own separate antidumping-duty rates and would receive the PRC-wide rate. *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014–2015*, 82 Fed. Reg. 18733, 18733–36 (Apr. 21, 2017) (*OTR Final Results*), as amended by *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2014–2015*, 82 Fed. Reg. 27224, 27224–26 (June 14, 2017). Commerce explained that it was following its usual practice of presuming that each company within the PRC's "non-market economy" is subject to the PRC government's control and would, unless the company demonstrated the absence of de jure and de facto government control, be assigned the shared PRC-wide antidumping-duty rate. *Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review: Certain New Pneumatic Off-the-Road Tires from the People's Republic of China; 2014–2015* at 6–8 (Dep't of Commerce Apr. 12, 2017) (*OTR Final Memo*); *see also Pirelli Tyre Co. v. United States*, 128 F.4th 1265, 1268 (Fed. Cir. 2025); *China Manufacturers Alliance,*

*LLC v. United States*, 1 F.4th 1028, 1036–37 (Fed. Cir. 2021); *Michaels Stores, Inc. v. United States*, 766 F.3d 1388, 1390, 1392 (Fed. Cir. 2014); *Sigma Corp. v. United States*, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997). Commerce found that appellants had failed to carry their burden of persuasion of showing the lack of government control, finding that their largest and controlling shareholders were directly or indirectly state-owned and "ha[d] the ability to control, and an interest in controlling, the operations of the company, including the selection of management and the profitability of the company." *OTR Final Memo*, at 10; *see id.* at 13 (similar).

Guizhou Tyre and Aeolus each filed suit against the United States in the Trade Court, challenging Commerce's separate-rate denials, and the cases were consolidated. Among the challenges presented were Guizhou Tyre's argument that Commerce had erroneously found that Guizhou Tyre elected board members through meetings not available to all shareholders and Aeolus's argument that Commerce had failed to consider important evidence, a "Rectification Report," that allegedly showed elimination of previous state control. In May 2019, the Trade Court remanded the matter for Commerce to reconsider its separate-rate determinations in light of all record evidence, including the accessibility of shareholder meetings and the significance of the Rectification Report. *Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1350, 1356–60, 1370 (Ct. Int'l Trade 2019) (*CIT 2019 OTR Decision*).

In the remand proceedings, Commerce again concluded that Guizhou Tyre and Aeolus failed to show a lack of state control over management selection, *i.e.*, the third "factor" bearing on de facto control, and assigned Guizhou Tyre and Aeolus the PRC-wide rate. J.A. 96–138 (*OTR Remand I*). The matter returned to the Trade Court, which, in May 2021, remanded the matter for the second time, requiring Commerce to make a redetermination of whether Guizhou Tyre or Aeolus should be assigned its own separate rate.

*Guizhou Tyre Co. v. United States*, 519 F. Supp. 3d 1248, 1255–62 (Ct. Int'l Trade 2021) (*CIT 2021 OTR Decision*). The court did not disturb Commerce's finding about management selection but faulted Commerce for not clearly indicating how it thought that factor related to the other three "stated factors" and to the bottom-line determination regarding de facto control over "export activities." *Id.* at 1256–57 (internal quotation marks omitted).

In September 2021, Commerce again denied each of Guizhou Tyre and Aeolus a separate rate. J.A. 139–202 (*OTR Remand II*). Commerce maintained that a respondent's failure to make the necessary showing with respect to a single de facto factor is sufficient for Commerce to deny that respondent a separate rate. *Id.* at 4, 15–24. Nonetheless, Commerce made findings regarding each factor: that Guizhou Tyre had carried its burden regarding the first two factors but not the third or fourth factors (retention of proceeds of export sales and independent disposition of profits or financing of losses), and that Aeolus failed to carry its burden only regarding the third factor. *Id.* at 4, 24–25; *see also id.* at 26–64.

On May 18, 2023, the Trade Court sustained the *OTR Remand II* determination. *CIT 2023 OTR Decision*. It accepted Commerce's rationale that a state-owned entity's "effective control over the selection of company management" "signif[ies] the power to influence all of a company's business activities, including export functions." *Id.* at 1380. The court could not conclude that such an inference was unreasonable, *id.*, and proceeded to sustain Commerce's findings as supported by substantial evidence, *id.* at 1381–85.

Appellants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

B

The other appeal we address in this opinion involves Commerce's order subjecting to antidumping duties certain truck and bus tires (TBT) from the PRC, based on an investigation of entries into the United States between July 1, 2015, and December 31, 2015.  Fed. Cir. No. 23-2165 (*TBT Appeal*).  In January 2017, Commerce concluded that Guizhou Tyre—specifically, GTCIE—was not entitled to a separate rate because it failed to show that it selected its management free of the control of its largest shareholder, a state-owned entity called the Guiyang Industry Investment Group Co., Ltd. (GIIG).  *Truck and Bus Tires From the People's Republic of China: Final Affirmative Determinations of Sales at Less Than Fair Value and Critical Circumstances*, 82 Fed. Reg. 8599, 8604 (Jan. 27, 2017) (*TBT Final Results*); *Truck and Bus Tires from the People's Republic of China: Issues and Decision Memorandum for the Final Affirmative Determinations of Sales at Less Than Fair Value and Critical Circumstances* at 24–28 (Dep't of Commerce Jan. 19, 2017) (*TBT Final Memo*); *Truck and Bus Tires From the People's Republic of China: Antidumping Duty Order*, 84 Fed. Reg. 4436, 4440 (Feb. 15, 2019) (*TBT Order*).

In March 2019, Guizhou Tyre filed suit against the United States in the Trade Court, contending (as relevant here) that Commerce "failed to consider whether the government control it found was, specifically, control over export activities" and that Commerce's denial of a separate rate was unsupported by substantial evidence, in part because Commerce erroneously found that certain GTCIE shareholders' meetings were not made accessible to all shareholders.  *Guizhou Tyre Co. v. United States*, 557 F. Supp. 3d 1302, 1306–07 (Ct. Int'l Trade 2022) (*CIT 2022 TBT Decision*).  In January 2022, the Trade Court remanded the matter to Commerce for reconsideration of the denial of a separate rate.  *Id.* at 1316–20, 1327.  The Trade Court held that Commerce had disregarded evidence of full

shareholder access to GTCIE shareholder meetings, failed
to explain how GIIG had exerted improper influence over
the board-selection process, and failed to explain "whether
its finding of government control extended, specifically, to
GTCIE's export activities." *Id.* at 1317–20.

In April 2022, Commerce again found that Guizhou
Tyre was not entitled to a separate rate. J.A. 117–84 (*TBT
Remand*). Commerce maintained that a respondent's fail-
ure to establish autonomy with respect to a single factor is
sufficient for a separate-rate denial but nonetheless ad-
dressed each de facto factor, finding that Guizhou Tyre had
demonstrated its independence under the first two factors
but not under the third or fourth factors. *Id.* at 8–10, 21;
*see also id.* at 8–24, 39–61. Commerce found that, although
GTCIE's shareholder meetings were accessible to all its
shareholders, other record evidence sufficiently showed
that Guizhou Tyre did not operate free of state control. *Id.*
at 8.

On May 22, 2023, the Trade Court sustained Com-
merce's Remand Determination. *CIT 2023 TBT Decision.*
It determined that, based on record evidence demonstrat-
ing "the ability of a single, government-owned shareholder
to control the selection of board members and to control in-
directly the selection of the senior managers who operated
the company," "Commerce reasonably could find or infer
that GIIG had the power to exert significant control or in-
fluence over the business operations of GTC and its wholly-
owned affiliate, GTCIE, including operations involving ex-
ports." *Id.* at 1395. The court sustained Commerce's find-
ings as supported by substantial evidence, *id.* at 1395–96,
and entered final judgment accordingly, J.A. 1–2.

Guizhou Tyre timely appealed. In its brief, Guizhou
Tyre stated that, although "each appeal is based on its own
administrative record, there are no material differences be-
tween the underlying records and the factual and legal is-
sues raised in" the OTR Appeal and the TBT Appeal. TBT

Appellants' Br. at 2. The government did not argue otherwise. *See generally* TBT Government's Br. At oral argument, appellants again stated that the cases were materially similar. Oral Arg. at 30:05–44, 34:13–35, https://oralarguments.cafc.uscourts.gov/default.aspx?fl= 23-2163_04072025.mp3. Accordingly, we discuss Guizhou Tyre's portions of the two appeals together below, though we cite each administrative record where relevant. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

We review decisions of the Trade Court by "apply[ing] anew the same standard used" by the Trade Court. *Pirelli Tyre*, 128 F.4th at 1269 (alteration in original) (quoting *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015)). We will uphold Commerce's determination here unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

One legal argument advanced (if only briefly) by appellants is that Commerce lacks a statutory basis for its use of a rebuttable presumption of government control in countries with non-market economies. OTR Appellants' Br. at 30–31, 50; TBT Appellants' Br. at 38–39. But as appellants acknowledge in the OTR Appeal, they did not present this contention to the Trade Court, OTR Appellants' Reply Br. at 7 n.2, and we see no indication that they raised it in the TBT Appeal either. We thus hold the argument forfeited, seeing no good reason to excuse the failure to present the contention to the trial court. *See Full Member Subgroup of American Institute of Steel Construction, LLC v. United States*, 81 F.4th 1242, 1256 (Fed. Cir. 2023) (citing *In re Google Technology Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020)).

Appellants also argue that, at least where majority state ownership is not present, Commerce's treatment of the third "factor" in its analysis of de facto control was

legally erroneous. Specifically, appellants suggest that Commerce may not properly deem decisive an exporter's failure to establish lack of state control of management selection, without further proof of state control of the export activities specifically. OTR Appellants' Br. at 34–49; TBT Appellants' Br. at 23–37. This contention cannot prevail in light of our decision in *Pirelli Tyre*, issued after the briefing in the matters before us here was complete. *See* 128 F.4th at 1268, 1270. At oral argument in the present matters, appellants made no meaningful effort to show otherwise. Oral Arg. at 8:28–10:48.

What remains are more case-specific issues: (1) whether substantial evidence supports Commerce's findings that Guizhou Tyre and Aeolus failed to demonstrate the lack of de facto government control and (2) whether Commerce provided no reasonable basis for changing its separate-rate determination for Guizhou Tyre between the fifth and seventh administrative reviews of OTR tire entries, or between the fifth administrative review and the TBT investigation. We are unpersuaded by appellants' arguments on both points.

A

1

Commerce's determination that Guizhou Tyre failed to rebut the lack of de facto government control is sufficiently supported by record evidence, including the following: (1) state-owned GIIG owns 25.2% of outstanding shares and is the largest and controlling shareholder of GTC (which owns 100% of GTCIE), *OTR Remand I*, at 14;[1] *OTR*

---

[1]    Because the Trade Court did not reach the merits of Commerce's factual findings under the third de facto factor in *CIT 2021 OTR Decision*, Commerce incorporated by reference its findings from *OTR Final Results* and *OTR*

*Remand II*, at 7; *TBT Remand*, at 6;[2] (2) at a 2012 share-holders' meeting, GIIG, because of its ownership of the to-tal shares present, "effectively selected" the GTC board, which remained in place during the relevant period, *OTR Remand I*, at 17–18, 26–27; *OTR Remand II*, at 45–47; *TBT Remand*, at 12–14; (3) GTC's Articles of Association em-powered the board to appoint and remove senior manage-ment, *OTR Remand I*, at 19–20; *OTR Remand II*, at 48; *TBT Remand*, at 13; (4) GIIG was the only shareholder that individually held enough shares to convene an interim shareholders' meeting, *OTR Remand I*, at 28; *OTR Re-mand II*, at 48–50; *TBT Remand*, at 11–12, 55–56; (5) in 2015, upon the "first instance of a GIIG-supported proposal failing to secure majority shareholder support, an interim shareholder vote was immediately called [by GIIG], and the prior failed proposals were submitted for re-vote" and passed, showing that "GIIG can effectively hold re-votes on GIIG's favored proposals until such a time where such pro-posals would prevail," *OTR Remand I*, at 28–29; *see also OTR Remand II*, at 48–49; *TBT Remand*, at 54–55; and (6) confidential information showed that GTC's chairper-son "communicate[s] with and receives suggestions regard-ing nominations and profit distribution from a government entity," *OTR Remand I*, at 29; *OTR Remand II*, at 51; *TBT Remand*, at 13, 56.

Guizhou Tyre argues that the 2012 and 2015 share-holders' meetings do not evidence government control, be-cause GIIG was not involved in nominating any director

---

*Remand I* into its final remand decision. *See OTR Re-mand II*, at 21 n.71. Accordingly, we cite to the relevant portions of both remand decisions.

[2]   In the TBT Appeal, Commerce found that GTC wholly owned GTCIE and appointed its management, and thus control of GTC was, by extension, control of GTCIE. *TBT Remand*, at 6, 14–16, 18–19.

candidates in 2012; both meetings were open to all share-holders and conducted transparently and in compliance with all legal requirements; and other shareholders, if they had arranged to act jointly, could have convened an interim shareholders' meeting. OTR Appellants' Br. at 62–68; TBT Appellants' Br. at 46–57. Commerce could reasonably reject Guizhou Tyre's view of the evidence and the inference to be drawn from it. Guizhou Tyre does not dispute that GIIG—in spite of its minority ownership and any legal protections—in fact dominated the votes in the 2012 meeting and selected GTC's directors, which then selected the management in place during the period of review. *Id.* Guizhou Tyre's argument that other shareholders *could have* banded together to convene an interim meeting or to oppose GIIG is unaccompanied by record evidence that such coordination of shareholders occurred, except possibly for the 2015 vote that GIIG quickly overturned. Nor does Guizhou Tyre meaningfully challenge Commerce's other factual findings. *Id.* On this record, Commerce could reasonably infer that GIIG's control over the selection of GTC's board members meant that GIIG, by extension, controlled the selection of senior management in charge of "day-to-day decisions regarding the company's export activity." *OTR Remand I*, at 18–20; *see OTR Remand II*, at 48; *TBT Remand*, at 10, 15–16; *see SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 845 (Fed. Cir. 2020) (quoting *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)) ("[S]ubstantial evidence includes 'reasonable inferences from the record.'"); *see also Zhejiang Machinery Import & Export Corp. v. United States*, 65 F.4th 1364, 1371 (Fed. Cir. 2023) (citations omitted) ("[T]he burden lies with [the respondent] to develop a full record and affirmatively rebut the presumption.").

2

Commerce similarly relied on sufficient evidence for its finding that Aeolus failed to rebut the lack of de facto government control in the OTR Appeal, including (but not

limited to) the following: (1) Aeolus is 42.58% owned by its largest shareholder, China National Tire and Rubber Co., Ltd. (China National Tire)—a wholly owned subsidiary of China National Chemical Corporation (ChinaChem), which is a state-owned entity—and 6.48% owned by other state-owned entities, *OTR Remand I*, at 7; *see OTR Remand II*, at 5; (2) Aeolus's website "states that it is under the control . . . of ChinaChem," which corroborated the ownership information that Aeolus provided, *OTR Remand I*, at 5; (3) the board of directors in place during the period of review was elected at a shareholders' meeting in 2014 where China National Tire "represented the vast majority of votes," *OTR Remand II*, at 54; *see OTR Remand I*, at 34–35; (4) Aeolus's board in turn selects its senior management, *OTR Remand I*, at 5; (5) Aeolus's chairman, who "votes at Aeolus's board meetings," was also a board member, and hence a "fiduciary," of China National Tire, *OTR Remand I*, at 35; *see OTR Remand II*, at 57; and (6) the Rectification Report did not provide any constraints on China National Tire's control of Aeolus other than an "unenforceable promise" by a state-owned entity not to interfere with Aeolus's independence, and Aeolus's enterprise resource planning system remained under ChinaChem's management, *OTR Remand I*, at 10–13; *see OTR Remand II*, at 56–57.

Aeolus argues that the 2014 board election does not show state control because the shareholders did not nominate the board candidates; the election complied with all legal requirements; non-state-owned shareholders could have collectively outvoted state-owned shareholders; and Commerce erroneously relied on shareholder information from 19 days after the board election to assess which shareholders had participated in the election. OTR Appellants' Br. 68–72. The Board could reasonably find these arguments unpersuasive for much the same reasons that Guizhou Tyre's related arguments were—*e.g.*, Aeolus does not dispute that China National Tire selected the directors at

the 2014 election, and Aeolus has not pointed to evidence it introduced to show that other shareholders jointly out-voted China National Tire, or that shareholder information changed so meaningfully over the 19 days such that Commerce erred in finding that China National Tire represented the vast majority of votes at that election. *See OTR Remand I*, at 34–35; *OTR Remand II*, at 55; *SeAH Steel*, 950 F.3d at 845; *Zhejiang Machinery*, 65 F.4th at 1371.

Finally, Aeolus disagrees with Commerce's findings and inferences based on the Rectification Report, website printouts, and the duty of Aeolus's chairman toward indirectly state-owned China National Tire. OTR Appellants' Br. at 73–77. We discern no reversible error in Commerce's findings on those points. On the full record, we conclude, Commerce had substantial evidence to support its denial of a separate rate for Aeolus.

B

Guizhou Tyre argues that Commerce, which granted a separate rate to Guizhou Tyre in the fifth administrative review of OTR tire entries, had no reasonable basis for reversing course when later denying a separate rate in the seventh administrative review (the OTR Appeal) and the TBT investigation, at issue here. OTR Appellants' Br. at 82–85; TBT Appellants' Br. at 57–60. Guizhou Tyre points out that, between these two reviews, state ownership of GTC actually declined, and a PRC agency, the Guiyang SASAC, stopped conducting performance reviews of GTC. OTR Appellants' Br. at 82; TBT Appellants' Br. at 57–58.

We have held that "Commerce may change its conclusions from one review to the next based on new information and arguments, as long as it does not act arbitrarily and it articulates a reasonable basis for the change." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014); *see also id.* ("Indeed, the Trade Court has recognized that each administrative review is a separate exercise of Commerce's authority that allows for different

conclusions based on different facts in the record."). Here, Commerce pointed to an "evolution of Commerce's separate rate analysis since the fifth administrative review," where Commerce began to "examine whether the government might be able to exercise, or have the potential to exercise, control of a company's general operations through *minority* government ownership under certain factual scenarios." *OTR Remand II*, at 47–48 & n.144 (citing *OTR Remand I*, at 24, 40 (collecting relevant Commerce memoranda and Trade Court decisions in footnotes)). The facts in the fifth administrative review also differ from those in the seventh administrative review and those in the TBT investigation. *See* OTR Government's Br. at 56 (pointing out that the fifth administrative review predated the July 2015 interim shareholders' meeting where GIIG held a revote on proposals that it had supported but failed to pass two months earlier). We are not persuaded that Commerce's determination in the seventh administrative review or the TBT investigation is unreasonable in light of its explanation and the different factual records.

### III

We have considered appellants' remaining arguments and find them unpersuasive. Accordingly, we affirm the decisions of the Trade Court.

**AFFIRMED**